FILED

2009 Mar-19  PM 02:57
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **MIA HENDERSON,**<br>Individually and on behalf of a class of<br>persons similarly situated | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. _____ |
| **SERRA CHEVROLET, INC.,**<br>**AND SERRA AUTOMOTIVE**<br>**MANAGEMENT, INC.** | ) ) ) ) ) | (Demand for Jury Trial) |
| Defendants. | ) ) | |

## CLASS ACTION COMPLAINT

Plaintiff Mia Henderson ("Plaintiff"), individually and on behalf of all others similarly situated, brings this Class Action Complaint against Serra Chevrolet, Inc. and Serra Automotive Management, Inc. (collectively herein referred to as "Defendants"), and alleges upon information and belief, except as to the allegations which pertain to Plaintiff which are based on personal knowledge, as follows:

## NATURE OF THE CASE

1.      Plaintiff brings this class action on behalf of herself and all other individuals who are victims of the deceptive business practices arising from "yo-yo" or "spot delivery" car sales performed or endorsed by Defendants.  In doing the acts and omissions alleged in this Complaint, each Defendant conspired with and among one another to engage in the wrongful conduct made the subject of this Complaint and acted as agents of one another, pursuant to a common goal or scheme to carry out these deceptive sales practices and to conceal their conduct.

2.      In this type of sales practice, it was and is a common for Defendants to have consumers make a down payment (whether in the form of a vehicle trade-in, cash deposit, or both) for a new or used vehicle, sign a Retail Installment Sales Contract ("RISC") and also sign other preprinted forms used by Defendants in the purchase and finance of new or used vehicles.  At the time the consumer signs the RISC, along with Defendants' other preprinted forms, Defendants give the consumer possession of a new or used vehicle.  The consumer believes that the RISC is final and Defendants give the consumer possession of the vehicle "on the spot."  At this point, Defendants require the customer to purchase and maintain owner's automobile insurance before taking possession of the vehicle and leaving the dealership with the vehicle.

3.      The RISC is purported to be binding upon the customer when it is signed. The RISC states that the customer has been approved for financing based on the terms and disclosures set forth in the RISC.  The RISC contains "Federal Truth-In-Lending Disclosures" required by the Federal Truth in Lending Act 15 U.S.C. § 1601, *et seq.*, or "TILA".  The other preprinted forms used by Defendants are not incorporated or referenced in the RISC.  There is no language in the RISC making it contingent upon financing approval by or assignment to a third party lender and the RISC contains a merger clause stating that "[t]his contract contains the entire agreement."

4.      In addition to the RISC, Defendants require consumers to sign other preprinted forms that are not incorporated into the RISC and include terms that are materially inconsistent with the RISC and the required TILA disclosures.  For example, consumer are required to sign a "Memorandum of Agreement of Dealer's Option" which states that "[i]n the event the Dealer cannot obtain the financing or leasing requested by the Customer(s) as specified on said retail installment contract or lease … the agreement of purchase or lease of the vehicle shall be canceled and held for naught, and the Customer(s) shall return the vehicle described above to the Dealer[.]"  The "Memorandum of Agreement of Dealer's Option" also requires the consumer to provide liability, comprehensive and collision insurance on the vehicle before leaving the dealership.

5.      The other preprinted forms used by Defendants in each of their car sale transactions state that the "vehicle is being delivered PENDING FINANCIAL APPROVAL by lender or lenders as a

convenience to the buyer or buyers, and is subject to all terms and agreements of the said contract." Further, the preprinted forms used by Defendants state "I UNDERSTAND THAT THIS VEHICLE IS BEING DELIVERED SUBJECT TO FINANCIAL APPROVAL." In Defendants' Retail Buyers Order, under ADDITIONAL TERMS AND CONDITIONS, it states that "the Seller shall not be obligated to sell until a finance source approves this Order and agrees to purchase a retail installment contract between Purchaser and the Seller based on this Order."

6.      Defendants' purpose in including this conditional language in their preprinted forms— language that contradicts the terms of the RICS—is to send the consumer home with a car and a conditional agreement so that Defendants can lock in the consumer. Defendants do not want the consumer visiting other dealerships and reconsidering or rethinking the deal offered by Defendants during the time when Defendants are determining if they can find financing that will give Defendants a profit to their satisfaction.

7.      The preprinted forms used by Defendants (including the "Memorandum of Dealer's Option" form) only give Defendants the authority to cancel the RISC. Further, the language in these preprinted forms stating that financing is pending approval directly contradicts the following portions of the RISC: (1) the TILA disclosure requirements detailing the financing terms, (2) the merger clause that states that the RISC is constitutes the entire agreement of the parties, and (3) the term identifying Defendants as the Creditor-Seller to whom payments are due. As a result, the facially valid TILA financing terms/disclosures made by Defendants in the RISC are rendered meaningless and illusory by the language contained in the other preprinted forms purposefully used by Defendants. It is Defendants that originally extend credit, Defendant Serra Chevrolet, Inc. is named on the RISC as the creditor, and Defendants are bound to the RISC. The bank or finance company, who most consumers assume is the lender, is actually just an assignee of Defendants. If the bank or finance company declines the assignment, a binding RISC still exists between the consumer and Defendants.

8.      After signing the RISC and allowing the customer to leave the dealership with the vehicle, Defendants then contact the customers and claim that they are not able to obtain financing pursuant to the terms already disclosed and agreed to in the RISC. Defendants tell the consumer to return the

vehicle because financing has fallen through. Even if this were true, it is misleading in several ways. First, it implies that Defendants are simply arranging financing with a third party lender. In fact, Defendant Serra Chevrolet, Inc. is listed as the "Creditor" on the RISC, and Defendants are the originating creditor or lender extending the installment loan to the consumer. Defendants then seek to sell that loan or RISC to a third party lender. The only question is whether, in selling the loan to a third party, Defendants will sell the loan at a loss, break even, or make a profit. Because Defendants make a significant profit selling the loan paper to third parties, another way to rephrase Defendants' justification for canceling the original RISC is that Defendants could not sell the loan paper at a large enough profit, and therefore they want to back out of the deal.

9. Defendants' leverage on the typical consumer in this situation is crushing: after showing-off the vehicle to family and friends, consumers must either rewrite the deal (to Defendants' less favorable terms) or admit to family and friends that, because of their credit, the car had to be returned. Defendants never tell these consumers why credit has been denied and never provide these consumers with written notice as required by Federal Law.

10. As part of this deceptive practice, Defendants also require customers to pay additional money down, pay increased APR, pay increased Finance Charges, or they are forced to return the car that they have already purchased and forfeit any down payment they have already paid. In addition, if the sales transaction involved a vehicle trade-in, the vehicle that is traded-in is not returned to the customer.

11. When customers complain about these practices, Defendants point to the language outside the RISC stating that the vehicle is being delivered pending finance approval and that the credit sale is conditional. In other words, Defendants want to claim the credit transaction is conditional and that the car still belongs to the dealer while at the same time claiming the car is the consumers. This contradiction results in commercially unreasonable and deceptive conduct that includes numerous violations of Federal Law and common law.

12. This Complaint is filed and these proceedings are instituted under the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*, the Federal Odometer Act, 49 U.S.C. § 32701 *et seq.*, the Fair Credit

Reporting Act, 15 U.S.C.A. § 1681 *et seq*., and the Equal Credit Opportunity Act, 15 U.S.C.A. § 1691, *et seq*., for both statutory and actual damages, reasonable attorney's fees, and costs because of Defendants' violations of these federal consumer protection statutes.   In addition, this Complaint alleges various claims which arise under Alabama common law.

13.     This action alleges that Defendants have violated state and federal law and Plaintiff seeks, *inter alia*, an order permanently enjoining Defendants from engaging in the fraudulent and deceptive business practice described in this Complaint.

14.     Plaintiff seeks certification of a class comprised of United States residents who are victims of the deceptive business practices arising from "spot delivery" car sales performed or endorsed by Defendants and all their affiliated dealerships.

15.     Plaintiff brings this Complaint to redress said injuries on behalf of herself and the Class, alleging:

        I.        Violations of the Truth In Lending Act;

        II.      Violations of the Fair Credit Reporting Act;

        III.     Violations of the Equal Credit Opportunity Act;

        IV.     Breach of Contract;

        V.      Common Law Unjust Enrichment;

        VI.     Suppression;

        VII.    Violation of the Federal Odometer Act; and

        VIII.   Conversion

## **JURISDICTION AND VENUE**

16.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 as this action arises under the laws of the United States including the Truth in Lending Act 15 U.S.C. § 1601, *et seq*., the Federal Odometer Act, 49 U.S.C. § 32701, *et seq*., the Fair Credit Reporting Act  15 U.S.C.A. § 1681, *et seq*., and the Equal Credit Opportunity Act, 15 U.S.C.A. § 1691, *et seq*.

17.    This Court has supplemental jurisdiction over the related Alabama state law claims asserted in this action pursuant to 28 U.S.C. § 1367.

18.    Venue in this District is property pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant conducts business and/or maintains its principal place of business in the Northern District of Alabama and the wrongful conduct out of which Plaintiff's claims arise occurred within the Northern District of Alabama.  Defendants are found, do business in and transact business within this District.

19.    No agreement to arbitrate this dispute exists between Plaintiff and Defendants or between the putative Class Members and Defendants.

## PARTIES

### Plaintiff

20.    Plaintiff Mia Henderson is an adult resident citizen of Alabama.

### Defendants

21.    Defendant Serra Chevrolet, Inc. is an Alabama corporation that has its principal place of business in the state of Alabama.  Serra Chevrolet, Inc. is in the business of selling cars and it owns and operates car dealerships located in the state of Alabama.

22.    Defendant Serra Automotive Management, Inc. is an Alabama corporation that has its principal place of business in the state of Alabama.  Serra Automotive Management is in the business of providing management services to motor vehicle dealerships that do business and operate under the trade name Serra Automotive Group which includes the dealerships owned and operated by Serra Chevrolet, Inc.

23.   In doing the acts and omissions alleged in this Complaint, each Defendant conspired with and among one another to engage in the conduct made the subject of this Complaint and acted as agents of one another, pursuant to a common goal or scheme to carry out the wrongful conduct and to conceal that conduct.

## MIA HENDERSON'S TRANSACTION

24.   On or about August 2, 2008, Plaintiff and Defendants entered into a RISC for the purchase of an automobile (2005 FORD EXPLORER, VIN#1FMZU63K75ZA13130). The   RISC   listed Defendant Serra Chevrolet, Inc. as the creditor and Plaintiff Mia Henderson as the buyer.  The RISC obligated Plaintiff to the financing and other terms disclosed by Defendant therein.

25.   Plaintiff paid Seven Hundred and 00/100 ($700.00) dollars down and agreed to participate in what Defendants termed the "deferred down payment plan."  Under this plan, Plaintiff agreed to execute the contract for the sale and financing of the vehicle and to bring in the additional $800.00 within two weeks to complete the down payment of $1,500.00.

26.   Plaintiff also signed a second RISC for the purchase of the same vehicle.  The creditor on the second RISC was also Serra Chevrolet, Inc. and the buyer was Mia Henderson.  However, pursuant to this RISC, Plaintiff agreed to pay only $700.00 as a down payment.  The second RISC was essentially a "backup RISC" that protected Defendants in the event that Plaintiff damaged or totaled the vehicle before returning with the remaining $800.00 for the down payment.  In that situation, Defendants would claim that the backup RISC, rather than the original RISC, was the applicable contract.

27.   In addition to the two RISCs, Plaintiff also signed Defendants' preprinted forms described above (including the "Memorandum of Agreement of Dealer's Option" form) that contain terms and language that contradicts the RISC.

28.     Plaintiff then took actions and incurred costs that are consistent with ownership rights of the vehicle including: paying the down payment, purchasing insurance in her name on the vehicle, and taking possession of the vehicle.

29.     On or about August 14, 2008, Plaintiff returned to the dealership as requested and tendered the additional $800.00 for the "deferred" down payment and inquired about the additional documents to receive her tag.  At that time, Defendants notified Plaintiff that her financing "fell through."  Defendants refused to allow Plaintiff to leave the dealership with the automobile and wrongfully repossessed her vehicle without cause.  Defendants refused to return Plaintiff's down payment and have since refused to give her credit towards the automobile.

## CLASS ACTION ALLEGATIONS

30.     Plaintiff repeats and realleges every allegation above as if set forth herein in full.

31.     Plaintiff brings this action, pursuant to Federal Rule of Civil Procedure 23, on behalf of herself and on behalf of all members of a class composed of all those persons who are victims of the deceptive business practices arising from "spot delivery" car sales performed or endorsed by Defendants and all affiliated Serra dealerships.  More specifically, Plaintiff brings this action on behalf of:

> All persons in the United States who have signed a RISC with Defendants and their affiliated dealerships and whose initial RISC was cancelled by Defendants or their affiliated dealerships

32.     The persons in the Rule 23 Class identified above are so numerous that joinder of all persons is impractical.

33.     Plaintiff believes that the names and addresses of the class members are readily attainable from Defendants.

34.     There are numerous questions of law and fact common to the Rule 23 Class that predominate over questions which may affect individual Class Members.  The questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class Members include, but are not limited to, the following:

(a)     Whether Defendants mistakenly, innocently, and/or willfully violated TILA and Regulation Z in each of its credit sales contracts by using inaccurate and illusory TILA disclosures, including the APR, the finance charge, the amount financed, the total payments, and the total sales price and every other term in Plaintiff's and each Class Member's Retail Installment Sales Contract;

(b)     Whether Defendants mistakenly, innocently, and/or willfully violated TILA and Regulation Z by failing to properly deliver all material disclosures as required to Plaintiff and other putative Class Members;

(c)     Whether Defendants mistakenly, innocently, and/or willfully violated the Fair Credit Reporting Act by failing to notify consumers that Defendants would be procuring credit reports on the consumer, and that adverse actions were taken against the consumer based in whole or in part on information contained in Plaintiff's and Class Members' credit reports;

(d)     Whether Defendants have mistakenly, innocently, and/or willfully violated the Fair Credit Reporting Act and Equal Credit Opportunity Act by failing to provide required notices to Plaintiff and Class Members when adverse action is taken by Defendants in the form of a credit denial or different financing terms than originally agreed upon;

(e)     Whether Plaintiff and Class Members are entitled to recover money damages for Defendants' violations of the Fair Credit Reporting Act, the Equal Credit Opportunity Act, and the Truth In Lending Act;

(f)     Whether Plaintiff and Class Members are entitled to declaratory relief as requested herein;

(g)     Whether Plaintiff and Class Members are entitled to class-wide relief as sought in this Complaint.

(h)     Whether Defendants have engaged and are still engaging in unfair or deceptive acts and practices;

(i)     Whether Defendants have engaged and are still engaging in unconscionable acts and practices; and

(j)     Whether the Class members have been damaged and, if so, the extent of such damages and/or the nature of the equitable and injunctive relief or statutory damages to which each Class Member is entitled.

26.     The claims of the representative Plaintiff are typical of the claims of the entire Class.

27.     Plaintiff will fairly and adequately represent and protect the interest of the Class in that she has no interests antagonistic to those of other members of the Class.  Plaintiff is represented by counsel experienced in the prosecution of class action litigation.

28.     A class action is superior to other methods for the fair and efficient adjudication of this controversy.  The interests of judicial economy will be served by concentrating this litigation concerning these claims in this Court based on the location of Defendants in this District. Furthermore, the expense and burden of individual litigation may make it difficult, if not impossible, for all members of the Class to address the wrongs done to them individually.  Because of the size of the individual Class Members' claims, few, if any, Class Cembers could afford to seek legal redress for the wrongs complained of herein.

29.     Absent a class action, it is not likely that Defendants will ever be required to disgorge the profits that they have made as a result of their activities which violate the federal statutory and Alabama common law.  Further, absent a class action the Class Members will not obtain the full relief to which they are entitled, the Class Members will continue to suffer losses without remedy, and Defendants will be permitted to retain the proceeds of its ill gotten gains.

30.     The management of this Class will not be difficult based on counsel's prior experience and expertise, and the uniform actions of Defendants.

31.     The prosecution of an action by individual Class Members would create the risk of (1) inconsistent or varying adjudications with respect to individual members of the putative Class that would establish incompatible standards of conduct for Defendants; and (2) adjudications with respect to individual members of the putative Class that would, as a practical matter, be dispositive

of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

32.     Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final declaratory relief with respect to Defendants' practices as described above.

33.     Defendants have a uniform policy or practice of not signing any of their preprinted forms, (such as the RISC) that contain arbitration agreements until there is final approval for financing from a financial institution.  Therefore, with respect to Plaintiff and all Class Members, Defendants did not intend to arbitrate any of the disputes arising from the allegations in this Complaint.

## COUNT I

## Violations of the Truth in Lending Act

34.     Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates herein such allegations by reference.

35.     This action seeks statutory penalties payable to Plaintiff and all of those similarly situated Class Members as a result of Defendants' violation of TILA, 15 U.S.C. §1601, *et. seq.* and Regulation Z, 12 C.F.R. §226.

34.     Plaintiff's transaction and the transactions of each Class Member, as described herein, were consumer transactions within the meaning of TILA, 15 U.S.C. §1601, *et. seq.* and Regulation Z, 12 C.F.R. §226.

35.     Under the terms of the Retail Installment Sales Contract entered into between Defendants and Plaintiff and between Defendants and the Class Members, Defendants calculated and listed the APR, the finance charge, the amount financed, the total payments and the total sales price based upon calculations which were figured from the date of the Retail Installment Sales Contract.  Said figures were set out in the Truth in Lending disclosures portion of the credit contract.

36.     Defendants mistakenly, innocently, and/or willfully violated TILA and Regulation Z in each of its credit sales contracts with Plaintiff and Class Members by using illusory TILA disclosures in its Retail Installment Sales Contract, including the APR, the finance charge, the amount financed, the total payments and the total sales price and every other term in Plaintiff's and putative Class Members' Retail Installment Sales Contracts because, at the time of consummation as defined by TILA, the disclosures were subject to subsequent change or cancellation at Defendants' sole and arbitrary discretion.  Plaintiff's transaction was typical of the credit sales transactions for other putative Class Members.

37.     By improperly charging interest on the amount financed before actually providing financed funds to Plaintiff and Class Members, Defendants disclosed the APR as lower than the true and accurate APR.

38.     Defendants violated the TILA and Regulation Z by failing to properly deliver all "material" disclosures as required by the TILA and Regulation Z, including the following:

   (a)     by failing to disclose accurately the "finance charge," in violation of 15 U.S.C. §1638(a)(3), and Regulation Z, 12 C.F.R. §226.18(d) and 226.4;

   (b)     by failing to disclose accurately the "amount financed" in violation of 15 U.S.C. §1638(a)(2) and Regulation Z, 12 C.F.R. 226.18(b); and

   (c)      by failing to disclose accurately the "annual percentage rate," in violation of 15 U.S.C. §1638(a)(4) and Regulation Z, 12 C.F.R. §226.18(e).

39.     Defendants further violated TILA by failing to deliver any disclosures to Plaintiff and Class Members in a form they could keep prior to the consummation of the transaction as required by 15 U.S.C. §1638(b)(1) and Regulation Z, 12 C.F.R. 226.17(a) and (b).

40.     Defendants further violated TILA because it treated the disclosures on the credit contract as estimates about the terms of the credit that it might provide Plaintiff and Class Members, and pursuant to Regulation Z 226.17(c)(2), the disclosures should have been marked as estimates.

41.     As a result of Defendants' violations of TILA and Regulation Z, Plaintiff, individually and on behalf of those similarly situated, seek statutory damages for herself and Class Members pursuant to 15 U.S.C. §1640(a)(2)(B).


# COUNT II

## Violations of the Fair Credit Reporting Act

42.     Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates herein such allegations by reference.

43.     Defendants engage and have engaged in a systematic pattern and practice of willfully violating the "notification" requirements of §1681(m) of the Fair Credit Reporting Act, 15 U.S.C. §1681, *et. seq.*, in that Defendants failed to notify Plaintiff and Class Members that Defendants would be procuring credit reports on them, and that adverse actions were taken against them based in whole or in part on information contained in the credit reports.

44.     Specifically, the Fair Credit Reporting Act, 15 U.S.C. §1681, *et. seq.*, has in place certain disclosure and notification requirements applicable to users of consumer credit information.  These requirements are in effect in order to ensure the accuracy and fairness of a consumer's credit information, with regard to confidentiality and the consumer's right to privacy.

45.     Section 1681(m) provides, in sum, that those who take adverse action against a consumer based on information contained in whole or in part from a consumer report must (1) provide notice of the action to the consumer; (2) provide to the consumer information about the applicable consumer reporting agency; and (3) notify the consumer of his or her right to obtain and dispute the consumer report.

46.     Defendants have violated §1681(m) by failing to provide the required notice to Plaintiff and Class Members when adverse action was taken by Defendants in the form of credit denial or offering different financing terms than originally agreed upon.

47.     Upon information and belief, Defendants do not and have never established or maintained any reasonable procedures to assure compliance with the notification requirements of the Fair Credit Reporting Act.   To the contrary, Defendants have acted innocently, negligently, or in willful disregard of their responsibilities under the Fair Credit Reporting Act and, upon information and belief, never provided the requisite adverse action notice to Plaintiff and Class Members in circumstances such as those described in this Complaint.

48.     As a result of Defendants' violations, Plaintiff and Class Members have been damaged. Plaintiff and the Class Members are entitled to all compensatory damages, punitive damages, attorney's fees, costs, and other relief proscribed and recoverable under the Fair Credit Reporting Act.

## COUNT III

### Violations of the Equal Credit Opportunity Act

49.     Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference therein.

50.     The Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691, *et seq.* operates to provide consumers with clear and unambiguous notice of whether or not credit has been extended, and if such credit is denied or revoked, to inform the consumer of the reasons for denial.  This function furthers the statute's purpose of eliminating discriminatory lending practices through record keeping procedures.  This statute mandates a complete documentary trail establishing when and why credit is denied.   Defendants have violated the ECOA in two ways.

      (a)     In a spot delivery car sale such as the one perpetrated on Plaintiff and Class Members, the consumer is initially informed that the credit application has been

approved in spite of the fact that credit has not been approved.  Such false credit approvals violate the ECOA and its regulations, including Regulation B, 12 C.F.R. § 202.9.

(b) The ECOA mandates that the consumer be provided with an accurate notice of  any credit decision.  12 C.F.R. § 202.9(a)(1).  In instances, such as the one perpetrated on Plaintiff and Class Members, where the credit application is subsequently rejected and the dealer requests that the consumer returns the vehicle, the dealer, as the originating creditor, must provide the consumer with a written adverse action notice under the ECOA.  Defendants have violated the ECOA and its applicable regulations by failing to provide the required notice to Plaintiff and Class Members when adverse action is taken by Defendants in the form of credit denial or different financing terms than originally agreed upon.

51. Defendants' violations of the ECOA were committed innocently, and/or negligently and/or willfully.  As a result of Defendants' violations, Plaintiff and Class Members are entitled to all compensatory damages, statutory damages, punitive damages, attorneys' fees, costs, and other relief proscribed and recoverable under the ECOA.

## COUNT IV

### Breach of Contract

52. Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference therein.

53. By engaging in the conduct described in this Complaint, Defendants breached standard form contracts with Plaintiff and Class Members by failing to provide funds and financing in accordance with the initial terms and agreements reached between the parties.

54. As a result of Defendants' breach of contract, Plaintiff and Class Members have been damaged and are entitled to any and all compensatory damages, attorneys' fees, interest, and costs associated therewith.

## COUNT V

### Common Law Unjust Enrichment

55.     Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference therein.

56.     Defendants' acts or omissions resulted in Plaintiff and Class Members paying down payments and/or providing Defendants with a vehicle trade-in for which Defendants were unjustly enriched by keeping the down payments and/or vehicle trade-in.

57.     As a result, Defendants have retained money or a thing of value which, in justice and equity, belongs to Plaintiff and Class Members.   Defendants have been unjustly enriched and must return the down payment and/or value for the vehicle trade-in to Plaintiff and Class Members.

## COUNT VI
## Suppression

58.     Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference therein.

59.     Defendants mistakenly, innocently, and/or willfully suppressed from Plaintiff and Class Members that their credit had not been approved at the time Plaintiff and Class Members signed the RISC.

60.     Defendants engaged in a pattern or practice of fraudulent suppression that included the fraud practiced on Plaintiff and Class Members.

61.     Plaintiff and Class Members relied on and were induced to act by Defendants' omissions and concealment.   Plaintiff and Class Members would not have paid money down, paid for insurance, and otherwise gone forward with the transaction if they had been told their credit was not approved at the time Plaintiff and Class Members signed the RISC.

62.     As a result of Defendants' suppression of material facts, Plaintiff and Class Members have been damaged.

## COUNT VII

## Violation of the Federal Odometer Act

63.     Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference therein.

64.     As part of the spot delivery transaction and in their routine course of business, Defendants provided Plaintiff and Class Members with an "Odometer Disclosure Statement" certifying the accuracy of the odometer.   The transfer of ownership date listed on the Odometer Disclosure Statement is certified and dated the same date the RISC is signed.   As a result Plaintiff and Class Members are led to believe that the actual transfer of ownership is complete as of the date the vehicle is delivered to Plaintiff and Class Members.

65.     The date listed on the Odometer Disclosure Statement is not the actual date for transfer.  If the spot delivery scheme works as intended, Plaintiff and Class Members are never made aware of the date when the actual transfer is made.  The true and correct odometer reading is not reflected on the Odometer Disclosure Statement on the actual transfer date and the proper mileage disclosures are never certified or disclosed.  By its conduct, Defendants induce Plaintiff and Class Members to certify mileage which is known by Defendants to be inaccurate and false.

66.     In order to facilitate the deception, Defendants as a routine course of business do not sign and deliver the Odometer Disclosure Statement to the State of Alabama; rather Defendants hold the Odometer Disclosure Statement and wait to see if they can sell the paper and/or the RISC is assigned

to a third party lender.    By their conduct, Defendants facilitate the deception and knowingly manipulate the accuracy of the Odometer Disclosure Statement.

67.    By not signing and delivering the proper title documents to Plaintiff and Class Members for them to sign, Defendants violated both state and federal laws that require Defendants to create a permanent public record on a secure document that discloses the odometer reading at the time of each sale: the laws simply require that Defendants use the title to record the odometer reading for each sale.

68.    The requirement for creating a permanent public record by recording the odometer reading on the title document ensures that a purchaser has the opportunity to view the information about the prior owner or owners and also places the odometer reading at the time of each sale in the official chain of title.  It also allows a customer to use title search services such as CAR FAX™ to verify the ownership and mileage accumulated during the ownership of each person in the chain of title.

69.    Rather than use a title document to create a permanent record of the odometer reading, Defendants as a routine course of business do not sign or process the Application for Certificate of Title until such time as the commercial paper has been sold.   If the RISC is not purchased by a third party lender, then Defendants discard the Title forms and never processes any of them.

70.    By not creating the odometer disclosure on the proper title document, Defendants not only denied Plaintiff and Class Members access to the information shown on that document, it also denied any future purchaser access to the information about the odometer reading for the spot delivery transactions with Plaintiff and Class Members.  Defendants' odometer disclosure practice denies Plaintiff and Class Members the information that would be presented to the consumer if the proper title document was used to create the odometer disclosure.

71.    The effect of these practices is to falsify the and the chain of title and mileage at the time of transfer to the automobile making it impossible to know all persons who have claimed an ownership interest in the automobile and whether or not the mileage shown on the odometer is accurate.

72.     By its conduct, Defendants mistakenly, innocently, and/or willfully and/or with intent to defraud violated the Federal Odometer Act in one or more of the following respects:

    (a)     Defendants altered or caused to be altered the odometer of the automobile with the intent to change the number of miles indicated;

    (b)     Defendants, in making odometer disclosures, gave false statements to a transferee in violation of 49 U.S.C. § 32705(a) and 49 C.F.R. § 580.4;

    (c)     Pursuant to 49 U.S.C. §32075, an odometer disclosure should have been created on the official title document for the sale of the automobile to Plaintiff and Class Members.

    (d)     Defendants violated the placement requirement of the Federal Odometer Act because an official title document was not used to create the disclosure of the odometer mileage for the sale to Plaintiff and Class Members.

    (e)     Defendants have otherwise violated the Federal Odometer Act, or a regulation prescribed or order issued under the Act.

73.     As a result of the above violations of the Federal Odometer Act, Defendants are liable to Plaintiff and Class Members for the sum of three times actual damages or $1,500, whichever is greater, and attorney fees and costs.  Moreover, instead of allowing Defendants to profit by the impossibility of determining the automobile's true mileage, Pursuant to the Federal Odometer Act, any attorney fees and costs are mandatory once a judgment is entered for Plaintiff and Class Members.

## COUNT VIII

### Alabama Consumer Credit Act ("Mini-Code") Ala. Code §5-19-1, *et seq.*

74.     Plaintiff repeats each and every allegation contained the paragraphs above and incorporate such allegations by reference herein.

75.     Defendants are Creditors under the Mini-Code as they routinely finance or arrange for financing for automobile purchasers for its customers.

76.     Through information and belief, Defendants violate numerous requirements of the Mini-Code as they relate to consumer transactions, and are not even properly licensed to undertake consumer financing transactions under the Act.

77.     Plaintiff and Class Members have been subjected to illegal financing practices, and Plaintiff and Class Members have been proximately caused to suffer loss of their down payment and/or the loss and value of their vehicle trade-in, and have suffered other incidental and consequential damages.  Plaintiff requests that damages and other appropriate remedies, including rescission, be awarded.

## COUNT IX

### Conversion

78.     Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference therein.

79.     Plaintiff's and Class Members' down payments and/or vehicle trade-ins were mistakenly, innocently, and/or wrongfully converted.  Plaintiff and Class Members made repeated demands for return of the down payment and/or trade-in.  Defendants have failed and/or refused to do so.

80.     Through information and belief, Defendants have used Plaintiff's and Class Members' down payments and/or vehicle trade-ins for their own purposes and have proceeded in a commercially unreasonable manner concerning the disposition of the down payments and/or trade-ins.

81.     As a proximate result, Plaintiff and Class Members have been caused to suffer loss of their down payment and/or the loss and value of their trade-in, and have suffered other incidental and consequential damages.   If it is proven that the conduct and practices of Defendants were attended by such malicious, oppressive, reckless, and/or wanton conduct as to warrant and award of punitive damages, then Plaintiff and Class Members would request that such damages be awarded.

# PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for an award against Defendants as follows:

a.    Certifying this action to proceed as a class action arbitration, denominating Plaintiff as the representative for the Class and her counsel as counsel for the class;

b.    Awarding Plaintiff and the Class compensatory damages and all statutory and exemplary damages permitted by law;

c.    Awarding Plaintiff and the Class punitive damages as a result of Defendants' willful and intentional unlawful and inequitable conduct;

d.    Permanently enjoining Defendants from continuing to engage in the unlawful and inequitable conduct alleged herein;

e.    Granting Plaintiff and the Class all equitable remedies permitted by law;

f.    Ordering and instructing Defendants to provide restitution and/or to disgorge into a common fund or constructive trust all monies paid by Plaintiff and the Class to full extent to which Defendants is unjustly enriched by their unlawful and inequitable conduct alleged herein;

g.    Ordering rescission of the agreements where appropriate;

h.    Granting Plaintiff and the Class the costs of prosecuting this action, together with interest and reasonable attorneys' and experts' fees;

i.    Granting such other relief as the Arbitrator(s) may deem just and proper under the circumstances and applicable laws; and

## JURY DEMAND

Plaintiff demands a trial by jury on all issues/claims that can be tried to a jury under applicable law.

RESPECTFULLY SUBMITTED

_Sara C. Hacker_
Sara C. Hacker
Counsel for Plaintiff Mia Henderson

OF COUNSEL:

Joe R. Whatley, Jr.
W. Tucker Brown
Sara C. Hacker
WHATLEY, DRAKE & KALLAS, LLC
1000 Park Place Towers
2001 Park Place North
Birmingham, AL 35203
(205) 328-9576
(205) 328-9669 Fax
jwhatley@wdklaw.com
tbrown@wdklaw.com
shacker@wdklaw.com


David L. Selby II
KEE & SELBY LLP
1900 International Park
Suite 220
Birmingham, Alabama 35243
(205) 968-9906 Direct
(205) 968-9909 Fax
ds@keeselby.com

Michael E. Parrish
PARRISH & THEUS, L.L.C.
2124 10th Avenue South
Birmingham, AL 35205
(205) 326-0026
mparrish@bham.rr.com